**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY PITTS as Guardian ad Litem for MARY PITTS,<br><br>Plaintiff,<br><br>v.<br><br>UNILAB CORPORATION d/b/a QUEST DIAGNOSTICS and T.A.M. PROP. INC.,<br><br>Defendants,<br><br>AND RELATED THIRD-PARTY CLAIMS. | Case No. 1:24-cv-01271 JLT HBK<br><br>ORDER DISMISSING ACTION FOR LACK OF SUBJECT MATTER JURISDICTION |

Plaintiff Mary Pitts fell while she was opening a door at the entrance of the defendants' diagnostic laboratory building. She is pursuing claims against them under the Americans with Disabilities Act and California law. This Court does not have jurisdiction to hear her ADA claim. She has not made allegations or offered evidence that could show either (1) that she plans on returning to the lab building and will encounter a discriminatory barrier if she does, or (2) that she would like to return to the building but is deterred by a discriminatory barrier.

Because Ms. Pitts does not have standing to pursue an ADA claim, this court lacks original jurisdiction over that claim, so it cannot exercise supplemental jurisdiction over her state law claims. The action is therefore **DISMISSED** without prejudice in its entirety.

**BACKGROUND**

In November 2023, Ms. Pitts went to a lab in Hanford, California for some blood work, as she had been doing for the past few years. (*See* Doc. 81-5 at 130–31.) She was 83 years old at the time and had some trouble walking. (*See* Docs. 81-5 at 128, 174–75; 92-2 at 2.) As she puts it in her complaint, she has had "a weak gait since her left hip replacement in June 2020." (Doc. 28 at 2.)

Before she visited the lab that day, she had always been able to open the building's front door, so she went to do that again. This time, when she pulled on the handle, it opened only about six or eight inches before slamming shut. (Doc. 81-5 at 130, 132, 135, 138–39.) She lost her grip on the handle and fell backwards to the ground, where she hit her head. (*See id.* at 130–31, 139–40.) She was taken to the hospital, where doctors closed her wound without issue (*see id.* at 141–43), but she has experienced a few persistent health and memory problems ever since (*see* Docs. 28 at 3; 81-5 at 127, 129, 143–44, 146, 155–56).

Ms. Pitts originally filed this lawsuit almost three years ago, in October 2024, in this court, represented by a guardian ad litem. (*See* Docs. 1, 2, 14.) She amended her complaint twice in 2025 and is now asserting claims against both the company that operated the laboratory (Unilab Corporation, doing business as Quest Diagnostics, Inc.) and the property owner (TAM Prop LLC). (*See* Docs. 28 at 1–2; *see also* Doc. 49.) She claims they violated the Americans with Disabilities Act, the California Unruh Civil Rights Act, and the California Disabled Persons Act. (*See* Doc. 28 at 3–6.) She also asserts a common law negligence claim, and she alleges specifically that the defendants were negligent per se based on the previously alleged violations of state and federal civil rights laws. (*See id.* at 6–7.) She seeks equitable relief, damages, attorneys' fees, costs, and any other appropriate relief. (*See id.* at 7–8.) She originally sought punitive damages as well, but she later withdrew that request. (*See* Doc. 49.) Discovery has now closed, and the parties are preparing for trial.

Several motions are pending. First, Ms. Pitts moves for partial summary judgment. (*See* Doc. 81.) She requests an order confirming that the defendants are liable under the ADA, the Unruh Act, and the Disabled Persons Act, leaving only the issue of remedies for trial. (*See id.* at

2–3; *see also* Doc. 81-1 at 11–12.) Second, Quest moves for partial summary judgment of the claim against it under the Unruh Act. (*See* Doc. 82 at 2.) As a practical matter, however, the motion goes well beyond the Unruh Act. The point of Quest's motion seems to be that this case should be tried as a negligence case and nothing more. (*See* Doc. 82-1 at 2.) Third, all three parties have filed motions to bar a number of retained experts from offering their opinions at trial. (*See* Docs. 54–60, 64–80.)

The Court must ensure it has subject matter jurisdiction to adjudicate these motions, regardless of whether anyone raises a jurisdictional issue. *See Langer v. Kiser*, 57 F.4th 1085, 1091 (9th Cir. 2023); *Chapman v. Pier 1 Imports* (*U.S.*) *Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc). The Court does not have subject matter jurisdiction to hear any claims that Ms. Pitts does not have standing to pursue, so the Court must verify that she has standing before it takes up any other issue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Ms. Pitts invokes this Court's jurisdiction under 28 U.S.C. § 1331, citing her federal claim under the ADA. (*See* Doc. 28 at 2.) She then relies on 28 U.S.C. § 1367(a) to invoke the Court's supplemental jurisdiction over her state law claims. (*See id.*) These jurisdictional allegations make her ADA claim something of a lynchpin: if she does not have standing to pursue her claim under the ADA, then this Court cannot exercise supplemental jurisdiction over her other claims. *See Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805–07 (9th Cir. 2001). For these reasons, the Court can do nothing without first ensuring that Ms. Pitts has standing to pursue her ADA claim.

**STANDING**

It is a plaintiff's burden to prove her own constitutional standing. *See Lujan*, 504 U.S. at 560–61. The weight of that burden depends on what stage the litigation has reached: a plaintiff "must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Lujan*, 504 U.S. at 561); *see also, e.g.*, *Chapman*, 631 F.3d at 954. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," because a court must "presume" that a plaintiff's "general allegations embrace those specific facts that are

necessary to support the claim." *Lujan*, 504 U.S. at 561 (citations, alterations, and question marks omitted). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e) (1987); *see also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]"). "And at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" *Id.* (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115, n.31 (1979)); *see also, e.g.*, *Langer*, 57 F.4th at 1094.

To reiterate, it is a district court's obligation to "examine jurisdictional issues such as standing" on its own, "sua sponte," without waiting for a motion, and to do so at every stage of the case. *Chapman*, 631 F.3d at 954. The Ninth Circuit has applied this rule strictly, including in ADA cases like this one. In *Chapman*, for example, the plaintiff was pursuing claims about architectural barriers at a furniture store. *Id.* at 943. Like Ms. Pitts, he asserted federal claims under the ADA and California law claims for damages. *Id.* The store did not move to dismiss. *See id.* at 954. The district court did not question its jurisdiction. *See id.* at 943–44. More than a year after the case was filed, midway through discovery, the parties filed cross-motions for summary judgment, which the district court adjudicated partially in the plaintiff's favor. *See id.* at 944. On appeal, the Ninth Circuit ultimately heard the case en banc and held that the plaintiff "lacked standing at the outset of the litigation" due to the vagueness of his complaint, and thus that the district court "should have dismissed" his claim on the pleadings, before the case ever reached the summary judgment stage. *Id.* at 955. The Circuit vacated the district court's judgment and remanded "with instructions to dismiss [the] ADA claim for lack of jurisdiction," without considering the evidence that the parties had supplied in connection with their summary judgment motions and without reaching the state law claims. *See id.* & n.11.

By virtue of that holding, it would be reversible error for this Court to adjudicate Ms. Pitts's summary judgment motion on any basis if her complaint does not include allegations that, if true, would show she has standing to pursue that claim. And even if her complaint did include

the necessary allegations, she would then need to cite evidence, not just allegations, to show she has standing to pursue a claim under the ADA before the Court could consider her summary judgment arguments on their own terms.

Ms. Pitts and Quest have conflicting views of what she must prove to show she has standing, so it will be helpful to review the relevant legal test. The "oft-repeated" formulation of the constitutional test for standing has three parts: a plaintiff must demonstrate that she has suffered an "injury-in-fact," that this injury is "traceable" to the defendants' actions, and that the injury "can be redressed by a favorable decision." *Id.* at 946. When, as in this case, a plaintiff alleges that the defendants violated the ADA by denying her "full and equal enjoyment" of a place of public accommodation, she can show that she has suffered the necessary "injury in fact" by proving that she "encountered or became aware of" a "barrier" that is "related" to her disability. *Id.* at 947 (citation and quotation marks omitted). It is not necessary for the plaintiff to go through the "futile gesture" of visiting a place if she knows that she will encounter such an illegal barrier, nor of attempting to overcome that barrier. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002).

But with that said, private plaintiffs like Ms. Pitts can seek only injunctive relief under Title III of the ADA (and not damages, among other types of retrospective relief), so knowledge of an ADA violation is not enough to show that the district court has subject matter jurisdiction. *Id.* at 1092. A private plaintiff who sues a place of public accommodation under the ADA must also show that there is "a sufficient likelihood" that she will "again be wronged in a similar way" in the future. *Chapman*, 631 F.3d at 948 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 111 (1983)). One way a plaintiff can demonstrate this "sufficient likelihood" is by showing she intends to return to the place where she encountered the discriminatory barrier. *See id.*; *see also, e.g.*, *Langer*, 57 F.4th at 1100. Another way is to show that she would like to visit the facility (or to visit it again) but that discriminatory barriers are "deterring" her. *Id.* at 950; *see also, e.g.*, *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1099–1101 (9th Cir. 2017). Ms. Pitts must therefore show either that she intends to return to the defendants' building or that discriminatory barriers at the building are deterring her from coming back.

There is one last point to clarify before answering that question. The parties disagree whether Ms. Pitts can pursue claims about barriers she did not actually encounter on the day she visited the defendants' building. It has long been true that if a plaintiff has standing to file an ADA lawsuit about "one aspect of a public accommodation," then she "may, in a single lawsuit, obtain an injunction to prevent impending discrimination on account of [her] specific disability." *Chapman*, 631 F.3d at 953. "It makes no sense to require a disabled plaintiff to challenge, in separate cases, multiple barriers in the same facility, controlled by the same entity, all related to the plaintiff's specific disability." *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008). And so, if Ms. Pitts has standing to pursue a claim about one discriminatory barrier, she also has standing to "sue for all barriers, even ones that surface later during discovery, as long as those barriers relate to [her] specific disability." *Langer*, 57 F.4th at 1094 (citing *Doran*, 524 F.3d at 1047 and *Chapman*, 631 F.3d at 950–53).

This does not mean the ADA is "an open-ended private attorney general statute." *Chapman*, 631 F.3d at 953. At "each stage of the proceedings," the plaintiff must show either that she "is deterred from returning to the facility" or that she "intends to return to the facility." *Id.* A plaintiff who is "indifferent to returning" or who does not genuinely intend to return has no standing to sue. *Id.* Nor does a plaintiff have standing to pursue an injunction to remove barriers that "do not pose a real and immediate threat," for example because they are not related to her disability. *Id.* (citing *Steger v. Franco, Inc.*, 228 F.3d 889, 893–94 (8th Cir. 2000)). And so again, Ms. Pitts must show she is more than just indifferent to returning, even now, and that each allegedly unlawful barrier (whether encountered or not) poses a real and immediate threat, given her specific limitations.

Ms. Pitts does not allege in her complaint that she intends to return to the Quest building. She does not allege that she would like to return but is deterred because the building does not comply with the ADA. The complaint also falls short because it cites several ADA violations without explaining how they are related to Ms. Pitts's alleged disability. (*See* Doc. 28 at 2–3.) The complaint alleges, for example, that the doorway was too narrow, that the exit signs inside the building were at the wrong height, that the walkway and parking lot had slopes that were

steeper than the maximum limits, and that the bumps on the bright yellow mats that marked the transition from walkway to parking lot were packed a bit too tightly. (*Id.* at 3.) But the complaint does not allege that Ms. Pitts's weak gait makes it more difficult for her to move up or down ramps or slopes. It does not allege that the ramps and slopes at the Quest building were too steep for her, nor that she avoided any part of the building or its entrance because of any steep slopes, nor that she even noticed how steeply the ground was sloping. The complaint does not attribute her fall to slopes at all. The complaint does not allege that she uses any devices (such as a cane, a walker, or wheelchair) that might not work well on sloped surfaces or in a narrow doorway. It does not allege that she has any condition (such as a vision impairment) that make exit signs at specific heights and mats with particular textures helpful.

For these reasons, the complaint does not include allegations that, if true, would show that she has standing to pursue a claim under the ADA. Her ADA claim must be dismissed for lack of jurisdiction. *Chapman*, 631 F.3d at 954. If a plaintiff's allegations do not show that the court has jurisdiction, the court can permit an amendment. *See* 28 U.S.C. § 1653. "Leave to amend should be granted generously, after considering 'bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.'" *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1221 (9th Cir. 2023) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011)).

The Court perceives no bad faith here. An amendment would, however, be a very late one at this stage of the case. The pretrial conference is only a few weeks away. (*See* Doc. 122.) It is also difficult to understand why Ms. Pitts did not include the necessary jurisdictional allegations in her original and amended complaints.

This delay may very well result in unfair prejudice to the defense, especially if Ms. Pitts makes new allegations that do not match her deposition testimony and the other evidence that the parties have collected over the years that this case has been pending. New allegations are also likely to prompt new discovery requests, motion practice, and thus even further delays in this case, which has already been pending for three years. But it may be possible to limit any resulting prejudice by keeping existing deadlines and the case schedule. And as noted, leave to

amend should be granted "generously," *Bolden-Hardge*, 63 F.4th at 1221. The Court therefore hesitates to prohibit any amendment on the basis of the likely delays and prejudice alone.

This leaves the question of futility. A federal court has jurisdiction to consider whether an amendment could correct a jurisdictional fault. *See Bolden-Hardge*, 63 F.4th at 1221 n.1. In the ordinary course of things, courts are very permissive about amendments aimed at adding new, clarifying factual allegations. This case is different. The evidence that the parties have filed in connection with their summary judgment motions shows that Ms. Pitts could not make any useful clarifications or additions if she amended her complaint.

A few days after Ms. Pitts's fall, a Certified Access Specialist named David Little went to the Quest building at the request of an attorney who would later represent Ms. Pitts in this case. (*See* Doc. 81-5 at 13–14.) He took pictures of the entrance area where she fell. (*See* Doc. 81-5 at 16–17.) His photos show that there were two large silver push buttons on the wall just outside the entrance that would have opened one of the front double doors automatically. (*See id.* at 16–17, 133.) There was also a sign on the door showing that it could be opened with a button. (*See id.* at 16–17, 134–35.) By all accounts, the sign and the buttons were clearly visible, and the buttons were working. (*See id.* at 16; *see also, e.g.*, Doc. 82-5 at 69–70.) The defendants' attorney asked Ms. Pitts about the sign and the buttons during her deposition. Unfortunately, she had not noticed them and did not know they were there. (*See* Doc. 81-5 at 134–35.) She had always opened the door by hand, without the button; she thinks she probably would have used it if she had seen it. (*See id.* at 134, 135–36.)

The door was a double door, and the button opened only one side. (*See, e.g.*, *id.* at 16–17.) Ms. Pitts' counsel contends on her behalf that the non-motorized half of the double front doorway—the hand-operated door she pulled on the day she fell—is much too heavy, regardless of whether the other side can be opened with a button. Be that as it may, it is now clear that Ms. Pitts could open the motorized door without pulling its handle, and she knows this now, so a heavy non-motorized door would present no problem if she ever went back without a family member to help her.

The argument about the heavy door is also faulty on its own terms. Mr. Little did not cite

any federal standards, laws, or regulations or offer any opinions about whether the ADA imposes limits on the weights of the non-motorized portion of a double door. (*See* Doc. 81-5 at 18, 35.) He cited only state regulations. (*See id.*) Neither side has explained what federal standards would apply, either.

In short, it is undisputed that Ms. Pitts now knows that she could press a button to open the front door at the defendants' building. It would now be unnecessary for her to put herself at risk by pulling the door open with her hand. She did not say in her deposition that she has any reason to go back to the defendants' building, and she has not cited any evidence that could show she has any reason to return, but even if she had, no evidence could show the door would be an obstacle if she returned, as summarized above. It is noteworthy that discovery has closed and the Court is unaware of *any* evidence supporting an intention to return or if she ever did return, that she would be unable to use the motorized portion of the door.

Ms. Pitts's counsel argues stringently on her behalf that there are other ADA violations at the Quest building that could support her ADA claim, including many barriers she did not encounter or know about at the time. It is true, as summarized above, that a plaintiff can pursue an injunction to remedy all violations related to her disability, even if they come up later on in the case, and even if she did not encounter them or know about them at first. *See Chapman*, 631 F.3d at 950–53. But that is possible only if a plaintiff first demonstrates that she "has Article III standing as a result of at least one barrier." *Id.* at 950. Only after "a plaintiff establishes Article III standing" does the Court consider the "scope" of her standing and the appropriate remedy, such as injunction about other discriminatory barriers. *Id.* As the Ninth Circuit was at pains to explain in *Chapman*, the ADA is not an "open-ended private attorney general statute." *Id.* at 953. Ms. Pitts does not have standing to assert claims about these other potential violations.

To be more specific, Ms. Pitts cannot rely on allegations and claims about the door button on the *inside* of the building, which was covered by window blinds on one of the days that Mr. Little visited to conduct an inspection. (*See* Doc. 81-5 at 34.) It is true that if another person visited the Quest building and wanted to use the inside button, that person might not see the button if the window shade were again pulled down, and if so, then that other person might have

trouble opening the door. But this is not another person's case. It is Ms. Pitts's case. No evidence shows she intends to return to the Quest building. No evidence shows the window shade might deter her from returning. No evidence shows she would have trouble finding or using any of the door buttons, inside or out.

The parties also argue stridently about the slope of the ground outside the Quest building. For reference, Mr. Little found that the ground near the outside door buttons was sloped at 3.3%, which in his assessment was steeper than state and federal regulations allowed. (*See* Doc. 81-5 at 16.) He also recorded some slopes in the parking lot and on the ramp between the parking lot and the sidewalk that, in his opinion, ran afoul of the applicable ADA regulations. (*See id.* at 19–20.) But again, even if one assumes for the sake of argument that Mr. Little is correct—if the slopes were steeper than the relevant regulations allowed—there is a more fundamental issue here: Ms. Pitts has not cited evidence or proposed any new allegations that could show she actually intends to return to the Quest building, nor that any slopes at the building or its entrance give her pause about returning. She has not said that sloping ground causes her any problems in general. She has not said that she worries about returning to the Quest building specifically because the slopes are steep. She testified that she was always able to walk to the front door without a problem, and she testified that she would probably have used the door buttons if had known they were there.

**CONCLUSION**

For these reasons, the operative complaint does not include allegations showing Ms. Pitts has standing to pursue a claim under the ADA. Though the Court has serious concerns that Ms. Pitts cannot demonstrate standing if leave to amend were granted, out of an abundance of caution, it will grant leave. Should Ms. Pitts choose to pursue the litigation in the Court by amending her complaint, <u>she **SHALL** cite evidence already adduced in this case—given that discovery has closed—supporting her amendments</u>. Thus, the complaint is **DISMISSED** with 21 days leave to amend her ADA claim.

///

///

///

The pretrial conference scheduled for September 21, 2026, and the trial date on November 3, 2026, are **VACATED**. All outstanding motions are terminated without prejudice to their refiling should that become necessary.

IT IS SO ORDERED.

Dated: _August 28, 2026_

UNITED STATES DISTRICT JUDGE